In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-3206 & 09-1049

SUSAN SRAIL, JEFFREY SRAIL,
JANEEN BRZECZEK, AND
RONALD BRZECZEK, individually
and on behalf of all persons
similarly situated,

*Plaintiffs-Appellants,*

*v.*

VILLAGE OF LISLE, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-02617—**Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 7, 2009—DECIDED DECEMBER 7, 2009

Before RIPPLE, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Appellants are citizens of the
Village of Lisle, Illinois, and of the Oak View subdivision
located therein. Appellants sued the Village of Lisle, the
Appellee, claiming that Lisle had violated the Equal

Protection Clause of the Fourteenth Amendment and state negligence laws by discriminating against Appellants. The district court certified a class consisting of all individuals who owned or resided in residential property in the Oak View subdivision. Subsequently, the district court granted Lisle's summary judgment motion on the equal protection claim and declined to exercise supplemental jurisdiction over Appellants' state law claim. Appellants filed this appeal, seeking reversal of the summary judgment decision and vacation of the award for costs. We affirm the district court's grant of summary judgment.

## I. Background

The Oak View subdivision was built in the 1950s, and in 1956, the developer created its own water and sewer utility to serve Oak View residents. Since that time, a privately owned utility company has provided Oak View residents with their water needs.

The Village of Lisle, Illinois, was incorporated in 1956. In 1967, Lisle developed its own water system. Prior to that time, most residents received their water through private, underground wells. Lisle's system grew gradually as developers built new housing developments, installing water mains that the developers then donated to Lisle. In 1980, Lisle purchased one of the two privately owned water companies operating in town, which also contributed to the growth of the Lisle system. Lisle did not purchase the privately owned water company operating in Oak View. The Lisle system received its water supply

from the DuPage Water Commission ("DWC"), which provided water from Lake Michigan to the utilities with which it contracted. Lisle would then deliver this water to its customers.

The water company serving Oak View entered into a similar contract with DWC to receive its water; however, because of difficulties in transporting the water from DWC to Oak View, Lisle entered into an agreement with DWC and the water company in 1995 providing that Lisle would deliver the water purchased by the water company from DWC's facilities to Oak View. This agreement was known as the "Wheeling Agreement."

In 2002, Illinois-American Water Company ("IAWC") purchased the water company that operated in Oak View, thus becoming the exclusive operator of the water system in the subdivision. Under both IAWC and its predecessor, Oak View's water system operated with pressure insufficient to extinguish fires. It was this concern that sparked the litigation in this case—Appellants claim that Lisle impermissibly discriminated against them by expanding its water services to other subdivisions within Lisle, but not to Oak View.

## II. Analysis

On appeal, Appellants assert that the district court erred in granting summary judgment for Lisle. Specifically, Appellants claim (1) that the district court erred in holding that Lisle's proffered monetary concerns could serve as a rational basis for its discrimination against

Appellants, and (2) that the district court improperly drew inferences in Lisle's favor to reach this holding. We address Appellants' arguments in turn.

## A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Pepper v. Oak Park*, 430 F.3d 805, 808 (7th Cir. 2005). We will affirm only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We construe all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* We may affirm on any ground adequately supported in the record; we need not affirm on the basis found by the district court. *See Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895 (7th Cir. 2003).

## B. Requirements of an Equal Protection Challenge

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Often an equal protection violation occurs when a regulation draws distinctions among people based on a person's membership in a "suspect" class. *Martin v. Schwano-Gresham Sch. Dist.*, 295 F.3d 701, 712 (7th Cir. 2002). Suspect classes include race, alienage, and national origin. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). Another typical equal protection challenge is based on denial of a funda-

mental right. *Id.* Fundamental rights include freedom of speech and religion. *Id.* With both suspect classes and denials of fundamental rights, the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause. *Id.*

Neither scenario is present in this case. Appellants are not members of a suspect class, nor do they assert that Lisle infringed upon their fundamental rights. *See Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir. 1984) ("The Constitution creates no positive entitlement to fire protection."); *see also Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991) ("We do not consider the right to continued municipal water service such a fundamental right . . . ."). In the absence of deprivation of a fundamental right or the existence of a suspect class, the proper standard of review is rational basis. *Vision Church*, 468 F.3d at 1000-01. Rational basis review requires the plaintiff to prove that (1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest. *Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006).

Appellants in this case allege that they are a "class of one," meaning, for practical purposes, that Appellants need not demonstrate the second element of an equal protection challenge. As the Supreme Court explained in *Village of Willowbrook v. Olech*, a class-of-one equal protec-

tion claim has merit when it "alleges that [the plaintiff] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000); *see also Engquist v. Or. Dep't. of Agric.*, 128 S. Ct. 2146, 2153 (2008). Appellants contend that a class-of-one claim can also be brought by certified class members, citing to the Supreme Court's decision in *Olech* that a class-of-one equal protection claim is not limited to just a single claimant. 528 U.S. at 564 n.1 ("Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis."). The district court speculated that Appellants could pursue a class-of-one equal protection claim even though they were members of a certified class, but did not make an explicit holding because its decision that Lisle had a rational basis for its disparate treatment of Appellants made such a holding unnecessary. We agree with the district court that we need not reach the class-of-one issue in this case because Appellants fail to establish the requirements of an equal protection claim. *See infra* Part II.C-D.

The district court also prudently refrained from attempting to reconcile the Seventh Circuit's divergent class-of-one precedent. At times, we have held that a class-of-one claim's absence of rational basis requires proof of illegitimate animus, while at other times, we have held that a class-of-one claim requires illegitimate animus as an alternative to the absence of rational basis. *Compare Hilton v. City of Wheeling*, 209 F.3d 1005,

1008 (7th Cir. 2000) ("We described the class of equal protection cases illustrated by *Olech* as 'vindictive action' cases and said that they require 'proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant.' " (*quoting Olech v. Vill. of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *aff'd*, 528 U.S. 562 (2000))), *with Lunini v. Grayeb*, 395 F.3d 761, 768 (7th Cir. 2005) ("We have recognized on several occasions that '[a] class of one equal protection claim may be brought where . . . there is no rational basis for the difference in treatment *or* the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant.' "(*quoting McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (emphasis added)). Like the district court, we need not address this issue to resolve the case before us because we find that Appellants fail to establish that there exist comparators with whom they are similarly situated and that Lisle lacked a rational basis for its decision. *See infra* Part II.C-D.

But we will address the fact that Appellants' claim fails for another reason entirely under *Engquist v. Oregon Department of Agriculture*, 128 S. Ct. 2146 (2008). The plaintiff in *Engquist* was a public employee with the state of Oregon who filed a class-of-one equal protection claim against her employer. 128 S. Ct. at 2149. In affirming the court of appeals, the Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." *Id.* at 2151. The Court explained that to be cognizable, a class-of-one theory requires "a clear standard against which departures, even

for a single plaintiff [can] be readily assessed." *Id.* at 2153. Important to our analysis here, the Court further reasoned:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 2154.

Lisle's decision to extend its water mains to some communities and not others was based on subjective and individualized assessments. For example, on some occasions Lisle determined that it should extend its water system to some communities based on groundwater contamination in those neighborhoods. On other occasions, Lisle decided that it would be profitable for it to extend its system to communities not already served by private utilities. And with regard to Oak View, Lisle made the determination that there was not enough interest to justify the tremendous expenditures required to service the community. This is the exact type of individualized and discretionary decision-making to which the

*Engquist* Court was referring. Even though Lisle's decisions affect the communities at-large, the decision to extend water services is inherently individualized because, in essence, it involves the decision to extend water to particular residences.

Furthermore, neither Appellants nor Lisle cited any standards, let alone clear standards, that Lisle uses to make determinations about the expansion of its system. In the absence of clear standards, Lisle's determinations are merely ad hoc and individualized and consequently offer no standard by which we can assess departures in conduct. We therefore harbor serious doubts that Appellants' claim is cognizable in the first instance. Even if the claim is cognizable, however, Appellants fail to establish an equal protection violation.

## C. Similarly Situated Comparators

Appellants cannot establish that there exist similarly situated communities to serve as comparators. In an equal protection claim, the challenger must prove that he or she was treated disparately from those similarly situated. *Smith*, 457 F.3d at 650. This necessarily requires a challenger to introduce evidence of similarly situated persons. *See RJB Prop., Inc. v. Bd. of Educ. of Chicago*, 468 F.3d 1005, 1010 (7th Cir. 2006). To be similarly situated, "comparators must be 'prima facie identical in all relevant respects.'" *Racine Charter One, Inc. v. Racine Union Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (*quoting Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). Although whether a comparator is similarly situ-

ated is usually a question for the fact-finder, summary judgment is appropriate when no reasonable fact-finder could find that plaintiffs have met their burden on the issue. *McDonald*, 371 F.3d at 1002.

In oral argument, Appellants claimed that three communities were similarly situated to Oak View: Front-Reidy-Westview, Woodridge Estate, and Lisle Farms. However, Appellants have failed to persuade us that these communities are suitable comparators to Oak View for a variety of reasons. Significant differences exist between these three communities and Oak View. First and foremost, all three of these communities were served by private, underground wells prior to the time that Lisle decided to extend its system to them. In contrast, IAWC operated in Oak View, and had Lisle extended its system there, it would have been forced to compete for customers with an existing private utility company. Although Appellants assert that Lisle similarly "competed" with private wells already existing in the three communities, we find this comparison unavailing. Competing with a preexisting private utility company for customers is not the same as providing services to communities that are only served by private wells.

Next, Appellants attempt to show similarity by pointing to what they view as public health and safety grounds for comparison. In both Woodridge Estates and Front-Reidy-Westview, the Illinois Environmental Protection Agency ("IEPA") found a carcinogen in the privately pumped well water supplying the residents. The IEPA and DuPage County recommended that Lisle

extend its system to these communities to prevent the threat of contamination. In Lisle Farms, the wells were not contaminated but the neighborhood was located immediately adjacent to a contaminated community and Lisle Farms residents were entirely dependent on well water. At least one motivation of Lisle's extension to Lisle Farms was to prevent the spread of contamination there as well. Unlike the other three communities, Oak View was not threatened by carcinogens in its water supply, but Appellants nevertheless argue that they are similar to these three communities because they faced a similar public health threat in the form of inadequate fire protection.

This comparison misses the mark. As Lisle noted in its brief and at argument, although both the threat of contaminated water and the threat of inadequate fire protection are public health and safety concerns, they are not necessarily similar threats. Unlike contaminated well water, inadequate water pressure can be corrected. In fact, since commencement of this litigation, IAWC has taken steps to correct the pressure problems in the Oak View system. Therefore, a comparison of the communities based on a public safety threat is inappropriate.

Finally, Appellants attempt to use "all other residents of Lisle" as comparators. This argument is not only overly broad, but also, it fails to appreciate that evidence of similarity requires specificity. *Maulding Dev., LLC v. City of Springfield, Ill.*, 453 F.3d 967, 971 (7th Cir. 2006) ("[Plaintiff's] sweeping argument that it was 'treated [ ] differently than any other developer has ever been treated,' with

no evidentiary support, has no specificity."). Merely stating that all residents of Lisle live within Lisle's borders and receive Lake Michigan water is insufficient to establish that such residents are similarly situated to Oak View residents.

The district court was correct in granting summary judgment on Appellants' equal protection claim because Appellants have failed to raise a genuine issue of material fact with respect to similarly situated comparators.

### D.  Rational Basis

A state or municipal statute survives rational basis scrutiny "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *City of Chicago v. Shalala*, 189 F.3d 598, 605 (7th Cir. 1999) (internal quotation marks omitted). This is an onerous test to overcome, as "the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Smith*, 457 F.3d at 652 (internal quotation marks omitted). Furthermore, "[w]e are required, under the rational basis standard, to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Shalala*, 189 F.3d at 606 (internal quotation marks omitted). Thus, any rational basis will

suffice, even one that was not articulated at the time the disparate treatment occurred. *Smith*, 457 F.3d at 652.

Lisle asserts that it had an economic reason for its refusal to extend its system into Oak View. Lisle claims that the costs associated with an extension, coupled with its assessment of resident disinterest and the unlikely success of an expansion, provided it a rational basis for its decision. Specifically, Lisle points to the fact that an expansion into Oak View would cost it approximately four million dollars. Lisle would normally recoup the costs of an expansion by passing these costs on to residents who connect to the Lisle system. However, in this case, Lisle offered evidence supporting its determination that residents of Oak View were uninterested in personally financing the expansion of the Lisle system. This conclusion was based on a survey of nineteen Oak View homeowners who lived adjacent to existing Lisle mains. Out of the nineteen surveyed, only one expressed interest in connecting to the Lisle system.

Appellants claim that Lisle's failure to survey all of the Oak View residents made its reliance on the nineteen responses unreasonable. But this ignores the fact that under rational basis review, "'courts are compelled . . . to accept a legislature's generalizations . . . .'" *Johnson v. Daley*, 339 F.3d 582, 600 (7th Cir. 2003) (*quoting Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993)). A rational basis "may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Thus, as long as Lisle was rational in its belief that the nineteen responses served as an

appropriate barometer to measure interest throughout Oak View, Lisle was entitled to base its decision on its survey of the nineteen residents. We cannot say that Lisle's reliance on the nineteen responses as a method to measure neighborhood-wide interest was unreasonable in light of the fact that smaller test groups are often used to predict public sentiment on a given issue. *See, e.g., Donohue v. Bd. of Elections of N.Y.*, 435 F. Supp. 957, 970 (E.D.N.Y. 1976) (discussing the use of a sample survey to predict the amount of voter fraud within the greater voter population); *cf.* Jonathan S. Fox, *Push Polling: The Art of Political Persuasion*, 49 Fla. L. Rev. 563, 627 (1997) ("[E]ven a relatively small sample can approximate the population, provided the properties of the sample are representative of the broader population.").

Additionally, Lisle relied on other bases to support its decision that extending its mains into Oak View was cost-prohibitive. For example, Oak View was served by an existing private utility company. In no other circumstance had Lisle extended its system into an area where it would have been forced to compete with another utility company. Furthermore, Lisle relied on its experience with Lisle Farms in reaching its conclusion that lack of public support for an extension was prohibitive. Lisle expended more than $400,000 for the expansion into Lisle Farms but only recouped $45,000 from resident connections there. Extrapolating this experience onto its consideration of an Oak View expansion, Lisle made the determination that without public interest in paying for the expansion, Lisle would stand to lose even more money than it had in Lisle Farms. These two consid-

erations lend further credence to the rationality of Lisle's belief that an Oak View expansion would be too costly.

Despite the rationality of Lisle's belief, Appellants contend that Lisle's asserted justifications only cover the period in 2006 when Lisle made the ultimate decision to avoid expansion into Oak View. Appellants assert that Lisle's discrimination also occurred during the period from 1995 (when Lisle entered into the Wheeling Agreement with IAWC) to 2006. This claim disregards the fact that rational basis review recognizes that a legislature need not explain its reasons for legislating at the time it undertakes (or refrains from undertaking) an action. *Smith*, 457 F.3d at 652. Rather, as we noted in *Smith*, "[t]he government need not have articulated a reason for the challenged action at the time the decision was made." *Id.*

The costs resulting from the proposed expansion, in addition to Lisle's perceived lack of community interest, its desire to avoid competition with existing utilities, and its past experience with Lisle Farms, forms a rational basis for its decision to treat Oak View differently than other Lisle communities. As we have noted in prior cases, significant expense is a sufficient rational basis that justifies disparate treatment. *Racine Charter One*, 424 F.3d at 687 ("We need only recognize that extending the busing benefit will come at a significant enough expense to [the school district], and that is rational basis enough to justify its transportation policy decision.").

Lisle faced a significant expense, and it harbored real concerns that it would be unable to recoup that expense. In

this situation, we cannot say that Lisle's belief was not rational. We again agree with the district court that this claim must fail because Appellants failed to negate Lisle's asserted rational basis for its refusal to extend its system into Oak View.

### E. Inferences on Summary Judgment

Appellants finally assert that the district court impermissibly drew inferences in Lisle's favor. On a motion for summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). In this case, Appellants contend that the district court erred by impermissibly drawing inferences in favor of Lisle. Specifically, they argue that inferences were drawn to find that Lisle was rational in relying on the nineteen homeowners surveyed, and that the asserted costs of expansion were as prohibitive as Lisle claimed them to be.

Appellants' argument fails to recognize that in determining that Lisle rationally relied upon the survey and the projected costs of expansion, the district court was not drawing inferences in Lisle's favor. It was not determining that the nineteen homeowners were, in fact, a true sampling of Oak View public opinion, nor was it determining what the actual costs to Lisle might be. Rather, the district court was making a finding that Lisle's *belief* in the existence of those facts was rational. This is all that a municipality is required to show to

survive rational basis review. As the Court noted in *Heller*, a municipality's belief need not be correct; it just needs to be rational. *See* 509 U.S. at 320-21 ("A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. . . . The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it whether or not the basis has a foundation in the record." (internal quotation marks omitted)). The existence or non-existence of the underlying facts supporting Lisle's determination that it would not extend its water mains is not at issue here. What matters in this inquiry is whether Lisle had a *rational basis* to believe in the existence or non-existence of such facts, and Appellants have failed to produce evidence to the contrary.

### III. Conclusion

There are numerous grounds on which we affirm the district court's grant of summary judgment. Initially, Appellants have failed to establish that they have a cognizable claim under *Engquist*. That basis alone merits dismissal; however, even if Appellants' claim was cognizable, Appellants have failed to raise a genuine issue of material fact as to whether Appellants are similarly situated to like individuals and whether Lisle had a rational basis for its disparate treatment of Appel-

lants. Because of Appellants' failure to meet any of the requirements necessary to establish their claim, we AFFIRM the district court's grant of summary judgment.

12-7-09