In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1615

GEORGE ROSARIO, et al.,

*Plaintiffs-Appellants*,

*v.*

RETIREMENT BOARD OF THE
POLICEMEN'S ANNUITY AND BENEFIT
FUND FOR THE CITY OF CHICAGO, et
al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10-cv-01512— **John J. Tharp**, **Jr**., *Judge.*

ARGUED DECEMBER 3, 2013 — DECIDED FEBRUARY 19, 2014

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Prior to 1992, Chicago police officers received pension credit for time worked for the Cook County Sheriff's Department. In 1992, the Retirement Board (which administers the Chicago Police Department's pension fund) began denying pension credit to retiring officers for their prior

service with the Cook County Sheriff's Department. In 2008, the Illinois Appellate Court ruled that this practice was improper under the controlling section of the Illinois Pension Code. Thereafter, a number of the officers who had been denied pension credit sought reconsideration of the Board's dispositions of their pension applications. The Board concluded that it lacked jurisdiction to reconsider the applications and summarily refused to do so. The officers filed suit in federal court on behalf of themselves and other similarly situated officers, alleging violations of their procedural due process and equal protection rights under the United States Constitution and the Illinois Constitution (and various derivative claims). Eventually, the district court dismissed the action with prejudice. The officers appeal. We affirm.

## I. Facts

Pursuant to the Illinois Pension Code ("IPC"), Chicago police officers are entitled to pension credit

> for service rendered prior to becoming a member or subsequent thereto for the following periods:
>
> …
>
> (c) While performing safety or investigative work for the county in which such city is principally located or for the State of Illinois or for the federal government, on leave of absence from the department of police, or while performing investigative work for the department as a civilian employee of the department.

40 ILCS 5/5-214. This statutory provision has not materially changed during any of the times relevant to this appeal. The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the "Board") administers the Chicago Police Department's pension fund (the "Fund"), and has the authority to grant or deny requests by officers to receive pension credit. *See* 40 ILCS 5/5-183–5-195. Prior to 1992, the Board granted pension credit to officers for their service with the Cook County Sheriff's Department performed prior to working for the Chicago Police Department. However, in 1992, the Board concluded that 40 ILCS 5/5-214(c) only applied to officers who worked for the Cook County Sheriff's Department while on a leave of absence from the Chicago Police Department. Thus, from 1992 until 2008, the Board denied pension credit for any officer's service with the Cook County Sheriff's Department performed prior to that officer's employment by the Chicago Police Department.

The Board's pension determinations are administrative decisions which may be reviewed pursuant to the provisions of the Illinois Administrative Review Law ("ARL"). *See* 735 ILCS 5/3-101–3-102. The ARL provides that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision … ." 735 ILCS 5/3-103. Thus, those officers who were denied pension credit could seek review of that denial in the Illinois courts within 35 days of the denial.

One of the officers who is a party to this action, Eusebio Razo, did so. In 1998, Officer Razo applied for pension credit

for prior work performed for the Cook County Sheriff's Department, but the Board denied Razo's application. Razo appealed to the Illinois Appellate Court. After thoroughly considering the text and legislative history of 40 ILCS 5/5-214(c), and mindful that the section "must be construed liberally and in favor" of Officer Razo, the court "agree[d] with the Board's construction and [found] that for an applicant to receive a pension credit for service on behalf of the county as provided for in section 5-214(c), the applicant's service must have been performed while he was on a leave of absence from the [Chicago Police] Department." *Razo v. Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi.*, No. 1-99-3798, slip op. at 6 (Ill. App. Ct. Dec. 29, 2000) (unpublished). However, because it was not published, *Razo* was not binding Illinois precedent. *See* Ill. Sup. Ct. Rule 23(e). The Board continued to apply its 1992 interpretation of 40 ILCS 5/5-214(c) after *Razo* was handed down.

Then, in 2008, Officer George Rosario similarly applied for pension credit for his work for the Cook County Sheriff's Department prior to his joining the Chicago Police Department. Yet again, the Board applied its 1992 interpretation and denied Officer Rosario's request. Officer Rosario filed a petition for review in the Illinois circuit court, which affirmed the Board's determination. Officer Rosario appealed to the Illinois Appellate Court, which held "that the clear language of the statute mandates that plaintiff is entitled to credit for the service he rendered as a Cook County sheriff's police officer and correctional officer for the Cook County department of corrections prior to his employment with the city department of police." *Rosario v. Ret. Bd. of Policemen's Annuity & Ben. Fund*

*of Chi.*, 887 N.E.2d 559, 564 (Ill. App. Ct. 2008). *Rosario*, which was published, is precedential.

After *Rosario*, the Board began granting pension credit to officers for their service with the Cook County Sheriff's Department performed prior to their employment by the Chicago Police Department. A number of officers who had been denied such pension credit between 1992 and 2008 filed petitions asking the Board to reconsider the dispositions of their pension applications. The Board declined to schedule any hearings to resolve the officers' petitions for reconsideration on the basis that the Board could not rehear final rulings after the 35-day limit imposed by 735 ILCS 5/3-103.

The officers did not seek review in the Illinois courts. Instead, a number of the officers filed suit in federal court (on behalf of themselves and other similarly situated officers) against the Fund, the Board, the Board Trustees, and the Board's executive director, John J. Gallagher, Jr.,[1] alleging that the Board's initial denials of the officers' applications for service credit and the subsequent refusals to reconsider their pension applications violated their rights to due process and equal protection. The officers subsequently amended their complaint and added allegations that the IPC and the ARL are constitutionally flawed insofar as they fail to provide a mechanism for reconsideration. The defendants moved to dismiss the complaint. The district court granted that motion and dismissed the action with prejudice. The officers appeal.

---

[1] The officers alleged that Gallagher either removed the officers' petitions for reconsideration from the Board's docket, or refused to schedule them.

## II. Discussion

On appeal, the officers raise a host of alleged legal errors, and the defendants offer a variety of theories supporting the action's dismissal. We address only whether the officers stated claims, either federal or state, for violations of their procedural due process or equal protection rights.[2] Because the officers' other claims depend on an underlying constitutional violation, and we find no such violation, we need not address the other issues raised on appeal.

### A.  Procedural Due Process

The officers articulate three separate theories underlying their procedural due process claim. First, the officers argue that the Board has the authority to reconsider the dispositions of the officers' pension applications, and that the defendants' refusal to schedule any hearings to resolve the petitions for reconsideration deprived the officers of procedural due process. Second, the officers argue that, if Illinois' statutory framework precludes the Board from reconsidering the pension-application rulings, then Illinois law itself deprives them of procedural due process. Third, the officers argue that because half of the Board members are police officers who will likely draw pensions from the Fund at some time, it follows that these Board members have an interest in reducing payments from the Fund in order to ensure that the Fund remains solvent. According to the officers, the self-interested

---

[2]   The officers' due process and equal protection claims—brought under both the United States Constitution and the Illinois Constitution—stand or fall together. *See Jarabe v. Indus. Comm'n*, 666 N.E.2d 1, 3 (Ill. 1996).

members render the Board partial and thereby deprive pension applicants of procedural due process.

### 1. Did the Board follow the applicable Illinois law?

The officers' first procedural due process argument founders on contrary Illinois precedent. In *Sola v. Roselle Police Pension Bd.*, 794 N.E.2d 1055, 1056 (Ill. App. Ct. 2003), the Roselle Police Pension Board granted Jeannette Sola's pension application in 1993 with an annual 3% cost-of-living increase. But in 2002, the Village of Roselle asked the Roselle Pension Board to reconsider its decision to grant Sola annual cost-of-living increases. *Id.* at 1056–57. When the Roselle Pension Board scheduled a hearing, Sola sued in Illinois state court seeking an order enjoining the Roselle Pension Board from holding the hearing. *Id.* at 1057. The Illinois circuit court concluded that the Roselle Pension Board lacked jurisdiction to reconsider its earlier disposition of Sola's pension application and granted Sola's request for injunctive relief. *Id.* On appeal, the Illinois Appellate Court affirmed. *Id.* at 1059. The court explained that the IPC, which governs the Roselle Pension Board, provides that the Board's decisions are subject to the ARL. *Id.* at 1057. Further, any "review of a decision under the Administrative Review Law, initiated either by an agency or an individual appearing before it, is limited to a 35-day period after the decision is issued." *Id.* (citing *Rossler v. Morton Grove Police Pension Bd.*, 533 N.E.2d 927, 930 (Ill. App. Ct. 1989)). And that limit is jurisdictional. *Id.* (citing *Holmes v. Aurora Police Pension Fund Bd. of Trs.*, 577 N.E.2d 191, 194 (Ill. App. Ct. 1991)). Consequently, an Illinois Pension "Board lacks jurisdiction to reconsider decisions after the expiration of the 35-day period." *Id.* at 1057–58.

So too here. All of the officers' requests that the Board reconsider the dispositions of their pension applications occurred outside of the 35-day period set by the ARL. (Or, in the cases of officers who sought further review in the Illinois courts, after the period for seeking reconsideration of the state courts' decisions.) Therefore, pursuant to *Sola*, the Board lacks jurisdiction to entertain the officers' petitions for reconsideration.

To avoid this result, the officers point to the Board's own rules and regulations which provide that "any application may be reviewed or reconsidered at any time by majority vote of the Board for good cause shown, in accordance with the provisions of law governing this fund … ." But the ARL, which imposes the 35-day limit, is the governing law. *See Sola*, 794 N.E.2d at 1057. Moreover, *Sola* explicitly rejected the argument offered by the officers here. 794 N.E.2d at 1057 ("Although an administrative agency's procedural rules may allow for an extension of the 35-day review period, the Pension Code provides no such extension." (citing *Holmes*, 577 N.E.2d at 195)).

The officers also argue that the IPC provides the Board with statutory authorization to modify an applicant's pension. *See* 40 ILCS 5/5-190 ("Any such determination [regarding service credit] by the Board shall be conclusive as to any such period of service *unless the Board reconsiders and changes the determination.*" (emphasis added)). But we perceive no conflict between this section of the IPC and the ARL's limitation of the commencement of any such reconsideration to the 35-day period following the Board's determination. *See also* 40 ILCS 5/5-228 ("The provisions of the Administrative Review Law, and all

amendments and modifications thereof and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article."). More importantly, the Illinois courts have explicitly rejected the argument that another section of the IPC authorizes the Board to modify an applicant's pension after the 35-day review period expires. *Sola*, 794 N.E.2d at 1058 (citing *Rossler*, 533 N.E.2d at 931). Accordingly, 40 ILCS 5/5-190 does not authorize the Board to reconsider its final application decisions, and the officers' due process claim premised on this theory fails.

### 2. Does the applicable law provide due process?

The officers' second procedural due process argument is that, if Illinois' statutory framework precludes the Board from reconsidering the pension-application rulings, then Illinois law itself deprives them of procedural due process. Specifically, the officers contend that the Board deprived them of their vested property interests in having their pensions correctly calculated (to include pension credit for each officer's work performed for the Cook County Sheriff's Department prior to his joining the Chicago Police Department), and that Illinois' statutory framework deprives the officers of procedural due process to the extent it lacks a mechanism for review of this "constitutional deprivation."

The problem with the officers' theory is that Illinois' statutory framework *does* provide a mechanism allowing the officers to seek review of the Board's calculations of their pensions. It is just that the ARL requires the officers to seek review within 35 days of the Board's disposition of their

pension applications. Thirty-five days may not be long, but "Illinois courts have long enforced this requirement, the purpose of which is to 'hasten the procedure of administrative review and avoid undue delay.'" *Holmes*, 577 N.E.2d at 195 (quoting *Lockett v. Chi. Police Bd.*, 549 N.E.2d 1266, 1268 (Ill. 1990)). Comparatively, in federal court, a civil litigant generally must appeal within 30 days, and a criminal defendant generally must appeal within 14 days. *See* Fed. R. App. P. 4(a)(1)(A), (b)(1)(A). And where there is a provision for judicial review, procedural due process does not require a mechanism for seeking reconsideration. *See Gleason v. Bd. of Educ. of Chi.*, 792 F.2d 76, 80–81 (7th Cir. 1986) (finding that "the Illinois administrative review process" affords "a meaningful opportunity to challenge" adverse administrative decisions).

In short, even assuming that the Board's decision in 1992 to deny the officers the contested pension credit was a poor one, procedural due process does not require a mechanism to right that long-past wrong. To hold to the contrary would be to vitiate the rule that a change in the interpretation of a law generally does not retroactively apply to final civil judgments. *See In re Disclosure of Grand Jury Material*, 821 F.2d 1290, 1293 (7th Cir. 1987) ("Once a civil judgment has become final, however, the concept of retroactivity does not apply. A final civil judgment remains binding regardless of any subsequent change in the law." (citing *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940))).

### 3. Is the Board impermissibly self-interested?

The officers' third procedural due process argument is that half of the Board members (who by statute are police officers)

have an interest in reducing payments from the Fund in order to ensure that the Fund remains solvent, and that these self-interested members render the Board partial and thereby deprive pension applicants of procedural due process. *See* 40 ILCS 5/5-178 (composition of city police pension boards). This argument has extraordinarily wide-ranging implications. If we were to accept it, then the IPC prescribes pension boards that could *never* provide pension applicants with the process required by the United States Constitution.

Undoubtedly, those "with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). But the police members of the Board gain no direct financial benefit from reducing an applicant's pension. That such decisions may have a negative impact on the Fund's solvency (and, consequently, its ability to pay the police members' pensions in the future) is too remote and insubstantial an interest to justify a procedural due process rule that simply prohibits police officers from serving on the Board. After all, the statutory framework provides some procedural protections from self-interested Board members. *See, e.g.*, 40 ILCS 5/1-109.3(a) (requiring training in trustee ethics); 40 ILCS 5/1-130 (prohibiting monetary gain on investments); 40 ILCS 5/5-180 (board member recall by officers). Similarly, the Board's ethics policy prohibits, *inter alia*, financial conflicts of interest. *See* Policemen's Annuity and Benefit Fund of Chicago, *Ethics Policy*, *available at* http://www.chipabf.org /ChicagoPolicePension/PDF/Investments/Ethics_Policy.pdf.[3] In

---

[3]  Moreover, in Illinois, "[a] claim of disqualifying bias or partiality on the
(continued...)

any event, the ARL provides the opportunity for review by impartial state courts. *See* 735 ILCS 5/3-101–3-102.

In short, the officers' procedural due process arguments are without merit. Therefore, the district court correctly dismissed the officers' procedural due process claims.

## B. Equal Protection

Alternatively, the officers contend that the defendants' actions *vis-a-vis* the disputed pension calculation deprived them of the equal protection of the law. Specifically, the officers contend that they are similarly situated to all other Chicago police officers who retired and had worked for the Cook County Sheriff's Department prior to working for the Chicago Police Department. Yet the Board awarded the service credit to all such officers who retired either prior to 1992 or after *Rosario* in 2008 (or, at least, had pension applications

---

[3] (...continued)
part of a member of the judiciary or an administrative agency must be asserted promptly after knowledge of the alleged disqualification." *E & E Hauling, Inc. v. Pollution Control Bd.*, 481 N.E.2d 664, 666 (Ill. 1985) (quoting *Duffield v. Charleston Area Med. Ctr., Inc.*, 503 F.2d 512, 515 (4th Cir. 1974)). Therefore, the statute of limitations likely would preclude the officers' third procedural due process argument with respect to the vast majority of the class—namely, those officers whose pension applications were resolved by the Board more than two years before the instant action was filed in 2010. *See Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007) ("In Illinois, the statute of limitations for personal injury actions is two years, and so section 1983 actions litigated in federal courts in Illinois are subject to that two-year period of limitations."). Because this action was filed on March 8, 2010, almost two years after *Rosario* was handed down on March 31, 2008, few (if any) of the class members would be able to avoid the statute of limitations.

pending when *Rosario* was handed down), but not to the officers who retired between 1992 and 2008.

Because this case does not involve distinctions among persons based on their membership in a "suspect" class or a denial of a fundamental right, we apply rational basis review. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Thus, the officers must "prove that (1) the [Board] intentionally treated [them] differently from others similarly situated; (2) this difference in treatment was caused by [their] membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest." *Id.*

Here, the Board's changes in its interpretation of 40 ILCS 5/5-214(c)—voluntarily in 1992, and compelled by precedent in 2008—resulted in the officers who applied for the disputed pension calculation between 1992 and 2008 (but prior to *Rosario*) being treated differently than the officers who applied for that calculation before 1992 or after *Rosario*. Even assuming that this establishes the first two elements of the officers' equal protection claim, the Board's decision is not irrational. The Board is authorized to calculate retiring officers' pension credits. *See* 40 ILCS 5/5-190. To do so, the Board must interpret and apply the IPC (consistently, of course, with Illinois court precedent). Thus, the Board's different treatment of those officers who retired before 1992 and the officers who are part of this action is rationally related to the Board's legitimate interest in properly interpreting the IPC in order to correctly calculate retiring officers' pension credits.

Similarly, the Board has a legitimate interest in the finality of its administrative judgments. *See Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1078 (7th Cir. 1997) (recognizing "[l]egitimate interests in finality"); *see also San Remo Hotel, L.P. v. City & Cnty. of S.F., Cal.*, 545 U.S. 323, 345 (2005) (referring to "the weighty interests in finality"); *Margoles v. Johns*, 798 F.2d 1069, 1072 (7th Cir. 1986) ("There is, of course, a strong policy favoring the finality of judgments … ."). Thus, the Board's different treatment of those officers who are part of this action and those officers who were awarded pension benefits after *Rosario* is rationally related to the Board's legitimate interest in the finality of its judgments.

Indeed, as discussed above, the Board *lacks the jurisdiction* to reconsider the (now final) dispositions of the officers' pension applications. Of course, to the extent the officers suggest that Illinois' statutory framework itself deprives them of equal protection of the law, that argument would fail because the ARL's temporal limit on review or reconsideration is rationally related to Illinois' legitimate interests in finality and in avoiding undue delay in administrative proceedings. *See Holmes*, 577 N.E.2d at 195. Therefore, the district court correctly dismissed the officers' equal protection claims.

### C.  Rosario and the Remaining Issues

Because the officers' constitutional claims fail on the merits, Rosario cannot seek damages in federal court for the expenses he accrued in combating the Board's conduct in the Illinois courts. For the same reason, we need not address the affirmative defenses (raised by the defendants on appeal), including qualified and  absolute immunity, *res judicata*, and the *Rooker-*

*Feldman* doctrine. Nor need we decide whether the district court erroneously dismissed the officers' declaratory judgment and conspiracy claims, or the claims against the Board's executive director, John Gallagher, all of which depend upon the underlying constitutional claims.

### III. Conclusion

Essentially, the officers' complaint is that Illinois law provides no procedure for making *Rosario* retroactive. We are sympathetic to the officers' desires to obtain pension credit that other retiring officers are receiving. But under the circumstances, there are no due process or equal protection violations. The officers' sole remedy lies with the political branches. Consequently, we AFFIRM the judgment of the district court.