In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 21-1674 & 21-2580

THOMAS OSTROWSKI,

*Plaintiff-Appellant,*

*v.*

LAKE COUNTY, *et al.,*

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:18-cv-0423-RLM — **Robert L. Miller**, **Jr.** *Judge.*

_____

ARGUED JANUARY 19 & APRIL 8, 2022 — DECIDED MAY 11, 2022

_____

Before WOOD, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

WOOD, *Circuit Judge.* Thomas Ostrowski worked for the Lake County (Indiana) Sheriff's Department before a workplace injury left him permanently disabled. He now receives a monthly pension payment from the County. But here's the rub: Lake County's disability pension plan does not provide cost-of-living increases, while the County's pension plan for non-disabled retirees does. Ostrowski brought this action

under both federal and state law, arguing that the difference between the two plans amounts to illegal disability discrimination.

The district court never reached the merits, holding instead that Ostrowski's suit was barred by a waiver that he signed while settling earlier litigation that he had brought against Lake County. Ostrowski appealed from that judgment; later, he also appealed the district court's award of fees and costs for the defendants. We have consolidated both appeals for disposition.

We hold that Ostrowski's claims were not barred by the claim waiver, but that the defendants are entitled to prevail on other grounds. We reverse the award of fees and costs.

**I**

Because the case was resolved on summary judgment, we view the facts in the light most favorable to Ostrowski, the non-moving party. See *Dixon v. County of Cook*, 819 F.3d 343, 346 (7th Cir. 2016). In any case, the material facts in the account that follows are undisputed.

A

Ostrowski worked for about eight years as a police officer for the Lake County Sheriff's Department ("the Department"). In 1996, he suffered a serious spinal injury during a training exercise. Although initially he returned to work, his condition worsened over time and forced him to undergo a double fusion surgery on his spine in 2003. Upon learning that the spinal surgery had failed, the Lake County Sheriff's Merit Board concluded that Ostrowski was permanently disabled. He retired and now receives a monthly disability pension.

The Department provides monthly benefits to three groups: retirees, disabled former employees, and some surviving spouses of law enforcement officers. It uses two formulas, each of which incorporates the beneficiary's final salary and years on the job, to calculate monthly benefits for disabled former employees and non-disabled retirees. For non-disabled retirees, the Department calculates benefits based on the number of years the beneficiary spent on the job. For those who retire early because of disability, Lake County calculates benefits as though the person spent 32 years working for the Department. (Surviving spouses' benefits vary depending on when their spouses passed away.)

Former employees and surviving spouses receiving retirement benefits are eligible for an annual cost-of-living increase to their benefits once they turn 55 years old. Those receiving disability pension benefits are not. Although Ostrowski turned 55 in 2016, he has never received a cost-of-living adjustment. Believing that this system unlawfully discriminates against employees who became disabled on the job, Ostrowski sued Lake County, the Department, the Lake County Treasurer, and the Pension Committee of the Pension Plan of the Lake County Sheriff, arguing that the county's policy violates the Equal Protection Clause of the Fourteenth Amendment, Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and state law.

B

This lawsuit was not Ostrowski's first against Lake County. From 2014 to 2015, he worked for the County as a 911 dispatcher. In 2016, he brought a lawsuit alleging that he was forced to leave the job because his employer denied him

reasonable accommodations. Ostrowski named the Lake County Board of Commissioners, the Lake County E-911 Commission, the Lake County Council, and two individual supervisors as defendants in his 2016 complaint. This separate litigation ended in February 2017 with a settlement agreement between Ostrowski and Lake County. Ostrowski's counsel drafted the 2017 settlement agreement, but the document provides that the common rule of construction resolving ambiguities "against the drafting party shall not be employed in" interpreting it.

At the end of paragraph 1 of the 2017 settlement agreement, the following language appears: "Nothing in … this Agreement shall change, modify, terminate, or affect in any way Ostrowski's pension, health benefits, or any other retirement benefits to which Ostrowski has a right, now or in the future."

Paragraph 2 of the agreement is entitled "release"; it reads as follows in pertinent part:

> Ostrowski … hereby forever releases and discharges Defendants, their affiliates, subsidiaries, related entities, and each of their respective successors, … agents, employees, attorneys, and representatives ... from any and all claims, demands, damages, causes of actions, rights,… and liabilities, of whatsoever kind or nature, known and unknown, matured or contingent, asserted or unasserted, foreseen or unforeseen, *arising prior to this Agreement*, including, but not limited to those resulting in any way from or in any way growing out of or arising from Ostrowski's employment with Defendants and

termination of such employment which could have been discovered, including, but not limited to, claims arising under the Americans with Disabilities Act[.] … Ostrowski understands and agrees that any claims he may have under the aforementioned statute, or any other federal, state, or local law, ordinance, rule or regulation are effectively waived under this Agreement. *No rights or claims arising after the execution of this agreement are waived hereby.*

(Emphasis added). The agreement also provides that Ostrowski released Lake County from any "damages or claims that are unknown to him at present" that "may arise, develop or be discovered in the future."

## C

When Ostrowski brought the present action, the defendants raised the release in the 2017 settlement agreement as a defense. The district court found that the release applied and granted summary judgment to the defendants on that basis. It reasoned that Ostrowski knew that his pension did not include cost-of-living increases before he signed the 2017 agreement. It also concluded that Ostrowski had waived any claims against the Sheriff, Treasurer, and Pension Committee because they were "affiliates" or "related entities" of Lake County. Ostrowski's first appeal, No. 21-1674, challenges that judgment.

## D

Shortly after the district court entered its judgment, the defendants moved for an award of fees and costs. The sole basis

for their motion was paragraph 15 of the 2017 settlement agreement, which provides that:

> In the event Ostrowski or Defendants bring a lawsuit relating to a breach of, or the enforcement of, this Agreement, or any of the Released Parties assert this Agreement as a defense to an action brought by or on behalf of Ostrowski, the prevailing party shall be entitled to seek attorneys' fees from the other party. This provision does not apply to any action or claim Ostrowski may assert under any federal or state statute or law that prohibits the recovery of such fees, costs and expenses by the Released Parties.

The district court granted the motion and awarded the defendants $221,577.25 in attorneys' fees and $4,487.08 in costs. Ostrowski's second appeal, No. 21-2580, challenges this decision.

## II

We take a fresh look at a district court's grant of summary judgment. *Dixon*, 819 F.3d at 346. Summary judgment is warranted when there are no genuine disputes of material fact between the parties and no reasonable factfinder could find for the non-movant on an essential element on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Paragraph 6 of the 2017 settlement agreement states that the applicable law is that of Indiana (excluding its choice-of-law rules). That state's courts interpret settlement agreements, like other contracts, "with the intention of the parties regarding the purpose of the document governing" and by

giving unambiguous contract terms "their clear and ordinary meaning." *Haire v. Parker*, 957 N.E.2d 190, 195–96 (Ind. Ct. App. 2011).

Paragraph 1 expressly addresses the topic of Ostrowski's retirement benefits. It states that "[n]othing in … this Agreement shall change, modify, terminate, or affect in any way Ostrowski's pension, health benefits, or any other retirement benefits to which Ostrowski has a right, now or in the future." In other words, the settlement agreement in its entirety has no effect on Ostrowski's disability pension. The release appears in paragraph 2 of the agreement, and thus is one of those things that does *not* "change, modify, terminate, or affect in any way" Ostrowski's disability pension.

That is enough to dispose of the threshold issue on which the district court relied. In the interest of completeness, however, we add a word about Ostrowski's alternative argument. It is based on the preservation of "rights or claims arising after the execution" of the settlement agreement. If each of Ostrowski's payments after the effective date of the settlement generates a fresh legal claim, then this would be an alternative path for him.

The Supreme Court held in *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Frebar Corp. of California*, that, for the purposes of a Multiemployer Pension Plan Amendments Act claim, "each missed [pension] payment creates a separate cause of action." 522 U.S. 192, 195 (1997). The general rule is that a new claim accrues with each payment of an installment obligation, because a plaintiff typically must wait until a defendant "misses a particular payment before suing to collect *that payment*." See *id.* at 208 (emphasis in the original); see also *Kuhn v. Kuhn*, 273 Ind. 67, 70 (1980). The pension

obligation at issue in *Bay Area Laundry*, like the one in Ostrowski's case, was paid in installments; therefore, the Court said, each new pension payment (or non-payment) generates a unique claim. Applying that reasoning to Ostrowski's case, each payment after he signed the settlement agreement in February 2017 has generated a distinct claim that falls outside the scope of the release.

Lake County relies on *Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114 (7th Cir. 1990), but the two cases differ in important ways. As we explained in *Fair*, under Illinois law a general release of claims applied to "all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Id.* at 1116 (internal quotation marks omitted). But this is a default rule, which applies only if there is no contractual language to the contrary. There is such language in the 2017 agreement. Moreover, to the extent that *Fair* is in tension with *Bay Area Laundry*, it is the latter case that controls.

Ostrowski also argues that the 2017 settlement agreement does not affect his claims against the Sheriff, Treasurer, and the Pension Committee because these entities were not parties to the agreement. Accepting the defendants' argument, the district court found that these additional entities were covered because the waiver in the agreement covered not only the County, but also its "affiliates," "officers," and "agents." This raises an issue of state law. We see no reason to delve into it, because nothing turns on it. The general exclusion in paragraph 1 of the agreement for matters affecting Ostrowski's pension resolves this part of the case. We thus move on to the merits.

### III

### A

Ostrowski argues that the defendants, by providing a cost-of-living increase for retirement benefits while denying one for disability pension benefits, violated Title I of the ADA, 42 U.S.C. §§ 12111–17. But as Ostrowski recognizes, this claim is going nowhere, because we already have decided that "retired and other former workers are not protected" by Title I of the ADA. See *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 457–58 (7th Cir. 2001); see also *EEOC v. CAN Ins. Cos.*, 96 F.3d 1039, 1043–44 (7th Cir. 1996). In *Morgan*, we held that a retirement plan did not violate the employment provisions of the ADA by extending a cost-of-living increase to non-disabled retirees but not those who retire early because of disability. See 268 F.3d at 457–58. That resolves Ostrowski's case.

Ostrowski's only response is to urge us to reconsider *Morgan*. We are not inclined to do so. That said, we confirm that he has preserved this issue for further review, should the *en banc* court or the Supreme Court wish to take it up.

Ostrowski's complaint also invoked section 504 of the Rehabilitation Act, 29 U.S.C. § 794. But on appeal, Ostrowski's brief barely touched on this theory. This argument is thus forfeited. See *Guzman v. City of Chicago*, 689 F.3d 740, 744 n.3 (7th Cir. 2012) ("Perfunctory and undeveloped arguments" are forfeited. (cleaned up)).

### B

The Equal Protection Clause of the Fourteenth Amendment prohibits the states from denying any person "the equal protection of the laws." U.S. Const. amend. XIV. When state action discriminates against a suspect class or denies a

fundamental right, courts apply strict scrutiny. See *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Otherwise, it is enough for the state actor to show a rational basis for the classification. *Id.*

Ostrowski's claim, as he concedes, qualifies only for rational basis review. See *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985) (holding that mental disability is not a suspect classification subject to heightened scrutiny under the Equal Protection Clause); *United States v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999) (holding that people with disabilities "are not a suspect or quasi-suspect class."). A local policy that treats two groups of people differently will pass muster so long as there is some "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Srail*, 588 F.3d at 946. Local decisions can survive rational basis review even if they only imperfectly achieve the legitimate government interest they aim to advance. *Id.* Government actors may rely on disability, like other classifications reviewed under the rational basis standard, as a proxy for other qualities or characteristics, even if it "proves to be an inaccurate proxy in any individual case[.]" *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 738 (7th Cir. 2000) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)).

Lake County has a legitimate interest in providing pension plans that meet the differing needs of distinct groups. Moreover, the cost-of-living adjustment is only one of several relevant differences in the plans before us. Non-disabled retirees must contribute a portion of their salary to the plan every year until they are eligible for retirement, and they become eligible only after 20 years on the job or at age 60. Employees who retire on account of disability begin receiving

payments as soon as they stop working, no matter how long they have paid into the pension system. Non-disabled retirees receive benefits based on the number of years they worked for the Sheriff's Department. By contrast, Ostrowski's disability pension is calculated as though he had spent 32 years working for the Department, though he in fact was on the job for only about eight years. And while disabled retirees do not receive cost-of-living adjustments, they do receive a lump sum refund of all contributions they previously made to the retirement plan, with interest. Non-disabled retirees do not have that option.

Viewed as a whole, the different plans provided to disabled and non-disabled former employees are rationally related to Lake County's legitimate interest in providing benefits that meet the needs of its employees, present and past. Lake County rationally could believe that disabled former employees will benefit more from an up-front lump sum payment returning their retirement contributions than from a cost-of-living adjustment provided years in the future. Lake County also has an interest in retention, the promotion of long-term careers in the Sheriff's Department, and the provision of more generous benefits to the employees who worked for it the longest. There is nothing irrational about providing more generous benefits for former employees who worked longer for the Sheriff's Department or who made more annual contribution payments. Similarly, Lake County could permissibly believe that it is appropriate to provide more generous benefits to surviving spouses of employees who died on the job than to disabled employees, in light of the sacrifice those families made.

Lake County's system need not be perfectly designed to achieve its goals. Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic" of government agencies' choices. *Heller v. Doe*, 509 U.S. 312, 319 (1993) (citations omitted); see also *Johnson v. Daly*, 339 F.3d 582, 587 (7th Cir. 2003) (collecting cases). As long as a policy has some rational connection to a legitimate state interest, improving it is a task for the democratic branches of government, rather than the courts. Lake County easily meets that test.

C

Ostrowski also asserts a novel state-law claim under an Indiana statute providing that Sheriff's Departments' disability pension payments "as a result of line of duty activities ... must be in reasonable amounts." IND. CODE § 36-8-10-15(b). We assume, without deciding, that this state statute supports a private right of action.

Ostrowski argues that a disability pension scheme that does not provide a cost-of-living increase is *per se* unreasonable. But Indiana courts have not gone that far. They have not even explained what constitutes a "reasonable" disability pension payment, much less held that a "reasonable" amount necessarily includes a cost-of-living increase. Federal courts must exercise caution before recognizing novel legal theories brought under uncharted state laws. See *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635–36 (7th Cir. 2007). Because Ostrowski cannot point to some state law supporting his theory, we decline to hold that Indiana Code § 36-8-10-15 requires a cost-of-living increase for all disability pensions.

**IV**

Although Lake County has prevailed on the merits, we conclude that it is not entitled to costs and fees. This court generally reviews fee awards for abuse of discretion, but we evaluate *de novo* the legal analysis underlying a fee award. *EEOC v. CVS Pharmacy, Inc.*, 907 F.3d 968, 971 (7th Cir. 2018).

The district court held that the defendants, as the prevailing parties, were entitled to fees and costs pursuant to the terms of the 2017 settlement agreement.[1] In so holding, the district court repeated the same mistake it made on the merits. Nothing in the settlement agreement affects any claims related to Ostrowski's pension benefits in any way. That means that the fees provision of the settlement agreement has no effect on Ostrowski's lawsuit about his pension benefits. If the contract does not apply, the defendants must bear the cost of their own litigation. See *Osler Inst., Inc. v. Forde*, 386 F.3d 816, 818 (7th Cir. 2004) ("Indiana adheres to the American rule, under which, in the absence of a statutory provision or an agreement providing for fees, each party is required to pay its own attorney fees."). Therefore, the fee award must be set aside.

**V**

Ostrowski's present lawsuit is not barred by his unrelated settlement agreement with Lake County, but his claims fail on

---

[1] Ostrowski filed for bankruptcy while this case was working its way through the courts. When someone declares bankruptcy, there is an automatic stay of most ongoing proceedings against her. See 11 U.S.C. § 362(a). The responsible bankruptcy court may modify the automatic stay upon request. Here, the bankruptcy court granted Ostrowski's request to lift the automatic stay for his fee appeal, and so we are free to resolve it now.

other grounds. We therefore AFFIRM the judgment of the district court granting summary judgment to the defendants. We REVERSE the district court's order granting fees and costs to the defendants.