FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRIS KOHLER,

*Plaintiff-Appellant*,

v.

BED BATH & BEYOND OF
CALIFORNIA, LLC, DBA Bed Bath &
Beyond #1136,

*Defendant-Appellee.*

No. 12-56520

D.C. No.
2:11-cv-04451-
RSWL-SP

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

CHRIS KOHLER,

*Plaintiff-Appellant*,

v.

BED BATH & BEYOND OF
CALIFORNIA, LLC, DBA Bed Bath &
Beyond #1136,

*Defendant-Appellee.*

No. 12-56771

D.C. No.
2:11-cv-04451-
RGK-SP

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
February 3, 2015—Pasadena California

Filed March 24, 2015

Before: Stephen Reinhardt and Ronald M. Gould, Circuit
Judges and J. Frederick Motz,[*] Senior District Judge.

Opinion by Judge Gould

**SUMMARY**[**]

**Americans with Disabilities Act**

The panel affirmed the district court's summary judgment
and reversed its award of attorneys' fees in favor of the
defendant in an action under Title III of the Americans with
Disabilities Act.

Affirming the grant of summary judgment on a claim
regarding clearance next to a restroom door in a store, the
panel followed the holding of *Kohler v. Bed Bath & Beyond
of Cal., LLC*, ___ F.3d ___, No. 12-56727, slip op. at 11–12
(9th Cir. Feb. 19, 2015), that the ADA Accessibility
Guidelines do not require any length of wall space on the side
of the doorframe opposite the hinges.

---

 [*] The Honorable J. Frederick Motz, Senior District Judge for the U.S.
District Court for the District of Maryland, sitting by designation.

 [**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

The panel also affirmed the district court's ruling that the defendant, as a tenant, was not liable for ADA violations occurring in the parking lot outside of its store where that area of the property was controlled by the landlord and was not leased by the defendant.

Reversing the district court's award of attorneys' fees to the defendant as a prevailing party, the panel held that the district court erred in concluding that eight of the plaintiff's ten claims were frivolous.

---

**COUNSEL**

Scottlynn J. Hubbard, IV (argued), Law Offices of Lynn Hubbard, Chico, California, for Plaintiff-Appellant.

Matthew S. Kenefick (argued), and Martin H. Orlick, Jeffer Mangels Butler & Mitchell LLP, San Francisco, California, for Defendant-Appellee.

---

**OPINION**

GOULD, Circuit Judge:

Chris Kohler appeals from a grant of summary judgment to defendant Bed Bath & Beyond of California ("BB&B") on Kohler's claims under Title III of the Americans with Disabilities Act ("ADA"), and also appeals the award of attorneys' fees and costs to BB&B as a prevailing defendant. Regarding summary judgment, Kohler contends that the district court erred in concluding that the ADA does not require wall space within the maneuvering clearance next to

the frame of a restroom door that must be pulled open; and that the district court erred in ruling that, BB&B, as a tenant, was not liable for ADA violations occurring in the parking lot outside of its store. Kohler further contends that the district court erred in concluding that several of his claims warranted the award of attorneys' fees to BB&B; and that the district court erred in its calculation of fees awarded. We have jurisdiction under 28 U.S.C. § 1291. We conclude that Kohler's substantive claims related to maneuvering clearance and tenant liability must be rejected and accordingly we affirm summary judgment. However, we agree that BB&B was not entitled to attorneys' fees for any of Kohler's claims, and so we reverse the district court's fee award.

# I

Kohler is disabled; he is a paraplegic and requires the use of a wheelchair to move in public. Several times in May 2011, Kohler visited the BB&B store at the Lake Elsinore Marketplace in Lake Elsinore, California. During those visits he encountered purported architectural barriers, both within the store and in the parking lot of the shopping center, that he claimed impeded his ability to fully use the store. Kohler brought suit against BB&B in the U.S. District Court for the Central District of California. Kohler claimed violations of the ADA, 42 U.S.C. §§ 12101–12213, and related state law provisions. In his complaint, Kohler alleged ten purported access barriers; those relevant to this appeal relate to: (1) floor and wall space adjacent to the restroom door; (2) slopes and cross-slopes in the shopping center's parking lot; and (3) the placement and operation of toilet paper and paper towel dispensers within the BB&B's restroom.

The parties filed cross-motions for summary judgment. With respect to the claims of insufficient clearance next to the restroom door, the district court concluded that the ADA Accessibility Guidelines ("Guidelines"), which set out the ADA compliance requirements for physical structures, required only a minimum amount of floor space, rather than both floor and wall space on the pull side of a door. The district court also concluded that BB&B did not "own, lease or operate" the shopping center parking lot, and therefore was not liable for any ADA barriers occurring there. Finally, the district court concluded that Kohler had not asserted an actionable barrier with regard to the location of the toilet paper dispenser, as his complaint asserted only violations of state law, and that any violations related to the paper towel dispenser had been rendered moot when BB&B installed a new, compliant dispenser.[1] On this basis, the district court denied Kohler's motion and granted BB&B's motion on all of Kohler's ADA claims. The district court declined to exercise supplemental jurisdiction over Kohler's state law claims and dismissed them without prejudice.

BB&B thereafter moved for attorneys' fees as the "prevailing party" under 42 U.S.C. § 12205. The district court concluded that eight of Kohler's ten claims "were, at a minimum, litigated without any foundation." Regarding Kohler's maneuvering space claims, the district court noted that it had described the claims as "illogical" in its summary judgment order, and that Kohler's counsel had unsuccessfully

---

[1] "Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

litigated similar claims. Regarding the parking lot claims, the district court held that Kohler should have been aware that BB&B did not own, lease or operate the parking lot for approximately the last year, as he had sued the shopping center's landlord and settled with it over the parking lot violations in September 2011. Regarding the toilet paper dispenser claim, the district court concluded that it was frivolous because it alleged a violation of a requirement not found in the ADA. Finally, the district court also concluded that Kohler's paper towel dispenser claim was "filed without any basis in law or fact," because Kohler alleged that operating the dispenser required "tight grasping, pinching or twisting of the wrist" but it was undisputed that he had full use of his hands. The district court made adjustments to BB&B's claimed lodestar, reduced that amount by twenty percent (to account for the proportional number of claims found frivolous), and awarded BB&B fees of $59,892.

Kohler timely appealed the district court's judgment, which is now before us.

## II

We review a district court's grant of summary judgment *de novo*. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008). We will uphold a summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm the district court on any basis supported by the record. *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003).

We review a grant of attorneys' fees for an abuse of discretion. *Armstrong v. Davis*, 318 F.3d 965, 970 (9th Cir.

2003). However, "[a] court may abuse its discretion if it uses incorrect legal standards, which we review de novo." *EEOC v. Bruno's Rest.*, 13 F.3d 285, 287 (9th Cir. 1993)

## III

Congress passed the ADA in 1990 "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Title III of the ADA prohibits discrimination in public accommodations, stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (quoting 42 U.S.C. § 12182(a)). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

In appealing the summary judgment order, Kohler addresses only two sets of claims: those dealing with maneuvering clearance around the BB&B restroom doors, and those dealing with the slopes and cross-slopes in the shopping center parking lot.[2]

---

[2] Though Kohler refers to his paper towel and toilet paper dispenser claims in both his "Facts and Proceedings" and "Statement of the Issues" sections, the only errors he argues related to those claims deal with the award of attorneys' fees. Kohler has waived his challenge to summary judgment on those claims. *See Simpson v. Union Oil Co. of Cal.*, 411 F.2d

## A

Kohler argues that the Guidelines require at least eighteen inches of clear wall length opposite the hinge side of a door that is pulled open. In *Kohler v. Bed Bath & Beyond of California, LLC*, No. 12-56727, we rejected the same claim; as a matter of law, the Guidelines do not require any length of wall space on the side of the doorframe opposite the hinges. ___ F.3d ___, No. 12-56727, slip op. at 11–12 (9th Cir. Feb. 19, 2015). We affirm the grant of summary judgment to BB&B on this claim.

## B

Kohler claims that the district court erred in determining that BB&B did not lease the parking lot at the shopping center, and that BB&B should have been obligated to remediate purported access barriers occurring in the parking lot. Further, he contends that BB&B's lease, which defined the parking lot as a "Common Area" and further stated that the "Landlord shall operate, maintain, repair and replace the Common Areas . . . [and] shall comply with all applicable Legal Requirements," was an attempt to contract away its ADA liability in violation of our decision in *Botosan v. Paul McNally Real.*, 216 F.3d 827 (9th Cir. 2000). However, Kohler's reliance on that case is misplaced; our decision did not create liability for tenants, or landlords, where the ADA did not already impose it.

In *Botosan*, a landlord argued that it could not be held liable for ADA violations on leased property because all ADA compliance responsibility had been shifted to its

897, 900 n.2 (9th Cir. 1969) (*rev'd on other grounds*, 396 U.S. 13 (1969)).

tenants. *See id.* at 832. Examining the text and history of the ADA, as well as its implementing regulations, we concluded that the ADA imposes concurrent obligations on landlords and tenants, and that a landlord, as an owner of the property, should be liable for ADA compliance even on property leased to, and controlled by, a tenant. *See id.* at 832–34. The landlord could not contract away its responsibility under the ADA.

Here, Kohler seeks to extend *Botosan* to the inverse situation, to extend ADA liability for tenants to those areas of the property controlled by the landlord. But such an extension undermines the fundamental logic of *Botosan*. BB&B has no liability to contract away on parts of the parking lot over which it has no control. Absent a lease, a landlord remains in full control of an entire property, as its owner. The ADA imposes compliance obligations on "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The existence of a lease that delegates control of parts of that property to a tenant has no effect on the landlord's preexisting obligation, because under the ADA, a party is prevented from doing anything "through contractual, licensing, or other arrangements" that it is prevented from doing "directly." 42 U.S.C. § 12182(b)(1)(A)(i). Here, in contrast, BB&B, like any tenant, has no preexisting control of a property. Absent a lease, it lacks any legal relationship at all to the property. That it takes control of a part of the property, subject to a lease, imposes ADA compliance obligations on it for that part of the property it controls; the landlord's preexisting obligations to the entire property continue unaffected. *Botosan* allowed a plaintiff to sue both landlord and tenant for ADA violations, confident that one party would be liable for barrier removal notwithstanding the lease provisions; this

outcome served the goals of the ADA by "hamper[ing] efforts of a landlord and a tenant to evade ADA requirements." *Botosan*, 216 F.3d at 834. But Kohler's reading of our decision would impose upon a single tenant—e.g., the cell phone kiosk operating in a shopping center's lobby—liability for ADA violations occurring at the far end of the shopping center's parking lot; such an outcome serves no purpose other than to magnify the potential targets for an ADA lawsuit.[3]

Kohler points to the same two provisions of the ADA quoted above to support his argument, but neither is amenable to the construction he urges. To reiterate, § 12182(a) imposes compliance obligations on "any person who owns, leases (or leases to), or operates a place of public accommodation," while § 12182(b)(1)(A)(i) prohibits discrimination, either "directly, or through contractual, licensing, or other arrangements." 42 U.S.C. § 12182(a)–(b). However, there is no dispute that both landlords and tenants have compliance obligations under the ADA, and neither provision explains the scope of such an obligation, the crux of the matter here. As in *Botosan*, reference to the legislative history behind each provision suggests a particular construction of that scope. The history behind § 12182(a) explains that the provision

> makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public

---

[3] It also unnecessarily complicates the process of remediating the ADA violation. Were a court to grant an injunction against a tenant to remediate a violation in an area of the property under the landlord's exclusive control, such an injunction would require the tenant to then sue the landlord, under an uncertain cause of action, to ensure subsequent remediation. The goals of the ADA are better served by allocating such compliance obligations directly to the landlord.

accommodation itself, has obligations under this Act. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations. It simply makes no practical sense to require the individual public accommodation, a doctor's office for example, to make readily achievable changes to the public accommodation without requiring the owner to make readily achievable changes to the primary entrance to the building.

H.R. Rep. No. 101-485, pt. III, at 55–56 (1990) (Conf. Rep.). And the history behind § 12182(b) further explains that

the reference to contractual arrangements is to make clear that an entity may not do indirectly through contractual arrangements what it is prohibited from doing directly under this Act. *However, it should also be emphasized that this limitation creates no substantive requirements in and of itself.* Thus, for example, a store located in an inaccessible mall or other building, which is operated by another entity, is not liable for the failure of that other entity to comply with this Act by virtue of having a lease or other contract with that entity. This is because, as noted, the store's legal obligations extends [sic] only to individuals in their status as its own clients or customers, not in their status as the clients or customers of other public

accommodations.   Likewise, of course, a
covered entity may not use a contractual
provision to reduce any of its obligations
under this Act.   In sum, *a public
accommodation's obligations are not
extended* or changed in any manner by virtue
of its lease with the other entity.

*Id.*, pt. II at 104 (emphasis added).   Taken together, these
conference reports from the legislative history highlight the
implausibility of Kohler's urged construction of the ADA.

Our conclusion today is further supported by regulations,
promulgated by the Department of Justice ("DOJ"), which
implement the ADA.  Specifically, § 36.403, which speaks to
the scope of landlord and tenant obligations dealing with
what is known as the "path of travel," implies that a tenant's
obligations as to ADA compliance are limited to those parts
of the property that it controls:

[A]lterations by the tenant in areas that only
the tenant occupies do not trigger a path of
travel obligation upon the landlord with
respect to areas of the facility under the
landlord's authority, if those areas are not
otherwise being altered.[4]

---

[4] A "path of travel" is a continuous, accessible pathway from a particular
altered area to "an exterior approach (including sidewalks, streets, and
parking areas), an entrance to the facility, and other parts of the facility."
28 C.F.R. § 36.403(e)(1).  In the context of a shopping center, such a path
of travel would include many features considered to be within the
"Common Area" under BB&B's lease, such as "walks and sidewalks, curb
ramps and other interior or exterior pedestrian ramps; clear floor paths
through lobbies, corridors, rooms, and other improved areas; parking

28 C.F.R. § 36.403.  This reading is further supported by the DOJ's formal interpretation of the regulation in its Technical Assistance Manual, which includes the following scenario:

> What if a tenant remodels his store in a manner that would trigger the path of travel obligation, but the tenant has no authority to create an accessible path of travel because the common areas are under the control of the landlord?  Does this mean the landlord must now make an accessible path of travel to the remodeled store?  No. Alterations by a tenant do not trigger a path of travel obligation for the landlord.  *Nor is the tenant required to make changes in areas not under his control.*

DOJ, Technical Assistance Manual on the Americans with Disabilities Act § III–6.2000 (1994) (emphasis added).  "The [DOJ]'s interpretation of its own regulations, such as the Technical Assistance Manual, must also be given substantial deference and will be disregarded only if plainly erroneous or inconsistent with the regulation."  *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 n.11 (9th Cir. 1999) (internal quotation marks omitted).  Here, the DOJ's formal interpretation is entirely consistent with the regulation, and we give it the deference it is due.

We hold that neither the ADA, nor our decision in *Botosan*, imposes upon tenants liability for ADA violations

---

access aisles; elevators and lifts; or a combination of these elements."  28 C.F.R. § 36.403(e)(2).

that occur in those areas exclusively under the control of the landlord.**[5]**

## IV

Finally, we reverse the district court's award to BB&B of attorneys' fees.

The ADA allows a "prevailing party" its fees.  42 U.S.C. § 12205.  But while prevailing plaintiffs regularly recover their fees, "policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 418–19 (1978).  Accordingly, "fees should be granted to a defendant in a civil rights action only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Summers v. A. Teichert & Son*, 127 F.3d 1150, 1154 (9th Cir. 1997) (internal quotation marks omitted).

The district court erred in concluding that eight of Kohler's ten claims were frivolous.  We have repeatedly cautioned that district courts should not "engage in *post hoc*

---

**[5]** Kohler, in his reply brief, points for the first time to an FAQ document from the DOJ, discussing landlord and tenant obligations in the context of leased medical office space.  That document does refer to a potential arrangement where a tenant could be liable for ADA violations in toilets used by other tenants.  *See* DOJ Disability Rights Section, "Americans with Disabilities Act, Access to Medical Care for Individuals with Mobility Disabilities," at 3, *available at*: http://www.ada.gov/medcare_ mobility_ta/medcare_ta.htm.  But this is a general statement, describing a possible arrangement between landlord and tenant; nothing in this source persuasively suggests that the DOJ has moved away from its specific and definite statement in the Technical Assistance Manual, quoted above.

reasoning," awarding fees simply "because a plaintiff did not ultimately prevail." *Bruno's Rest.*, 13 F.3d at 290. This admonition applies even in cases which are resolved at summary judgment because no "reasonable jury could return a verdict in [the plaintiff's] favor." *See Thomas v. Douglas*, 877 F.2d 1428, 1434 & n.8 (9th Cir. 1989). Here, Kohler's claims regarding maneuvering space and the liability of a tenant for common areas were not clearly resolved by our prior caselaw interpreting the ADA. Kohler was entitled to bring this suit to seek resolution of these questions. *See Gibson v. Office of Att'y Gen., State of Cal.*, 561 F.3d 920, 929 (9th Cir. 2009) ("Because Plaintiffs raised a question that was not answered clearly by our precedent, we hold that their claim was not frivolous."). The law grows with clarity for benefit of the public through such actions even if they are not successful.

We also reverse the district court regarding Kohler's paper towel dispenser claim, which was rendered moot by BB&B's voluntary remediation of the barrier. Though Kohler may indeed have litigated the claim without foundation, resolution of a claim via the mooting of any possible relief does not make BB&B a "prevailing party" entitled to fees, as there is no "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001).

Kohler's final claim, related to the toilet paper dispenser, was also not frivolous. Kohler alleged that the dispenser was "difficult—if not impossible—for [him] to reach and use" due to its distance from the front of the toilet. The applicable Guideline does require dispensers to be "within reach," though it imposes no requirement that a dispenser be mounted

a particular distance from the front of the toilet (only from the floor). 28 C.F.R. Pt. 36, App. D § 4.16.6. Kohler supported his claim by relying on a requirement found in California law, which the district court correctly concluded did not govern an ADA claim. But in this instance, Kohler's claim did not become frivolous simply because he referred to a state law requirement, and we reverse the district court's contrary conclusion.

## V

The district court did not err in granting summary judgment to BB&B on Kohler's ADA claims and we affirm as to summary judgment. But the district court erred in determining that any of Kohler's claims were frivolous, and we reverse the award of attorneys' fees. Each party shall bear its own costs.

**AFFIRMED in part and REVERSED in part.**