In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 17-1828

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

*v.*

CVS PHARMACY, INC.,

*Defendant-Appellee.*

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 863 — **John W. Darrah**, *Judge.*

───────────────

ARGUED DECEMBER 5, 2017 — DECIDED JUNE 8, 2018

AS AMENDED ON PETITION FOR REHEARING –

NOVEMBER 2, 2018

───────────────

Before WOOD, *Chief Judge*, and ROVNER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. On the surface, this appeal is about a fee award entered against the Equal Employment Opportunity Commission (EEOC or Commission). But there is more than meets the eye. The award relates to a complaint that the

Commission filed against CVS Pharmacy, Inc., alleging that CVS was using a severance agreement that chilled its employees' exercise of their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* After an investigation, the Commission filed suit in 2014 against CVS. It contended that CVS's use of the severance agreement constituted a "pattern or practice of resistance" to the rights protected by Title VII, in violation of section 707(a) of the statute. 42 U.S.C. § 2000e-6(a).

The district court rejected this claim on summary judgment, and we affirmed in *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335 (7th Cir. 2015). After our decision, the district court awarded CVS $307,902.30 in attorneys' fees. It reasoned that the EEOC should have realized even before filing the suit that EEOC regulations required initial conciliation before it could proceed with an enforcement action under section 707(a). But that was not at all clear at the time the EEOC acted. We conclude that the district court's decision impermissibly rested on hindsight, and so we reverse.

## I

Because we addressed the facts and legal background of this case at length in our earlier opinion, see 809 F.3d at 336–38, a brief outline suffices for present purposes. CVS's severance agreement came to the attention of the EEOC in 2011 after a former store manager, Tonia Ramos, filed a charge with the Commission. Ramos had accepted a severance agreement that included a broad release of claims and a covenant not to sue, but which carved out exceptions for "rights that Employee cannot lawfully waive" and for participation "in a proceeding with any appropriate federal, state or local govern-

ment agency enforcing discrimination laws." The EEOC argued that the agreement's broad release and obscure exceptions could deter signatories from cooperating with the EEOC or otherwise exercising their retained rights.

Ordinarily, if the EEOC thinks that a charge has merit, the Commission first engages in conciliation with the employer pursuant to section 706's procedural requirements. See 42 U.S.C. § 2000e-5(b). If the parties cannot negotiate an acceptable solution, the Commission has the authority to sue the employer in federal court, on the employee's behalf. See *id.* § 2000e-5(f). But the EEOC took a different tack in Ramos's case. It abandoned Ramos's charge of an unlawful employment practice by issuing her a right-to-sue letter in June 2013. Eight months later, the EEOC filed suit under section 707(a), which it construed as containing a grant of independent litigation authority. That section allows for suits against "any person or group of persons … engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter … ." *Id*. § 2000e-6(a).

The statute distinguishes between section 706, which allows the EEOC to bring what are essentially individual suits, and section 707's class-like "pattern or practice" provisions. Typically, through section 707(e)'s incorporation of section 706's procedural requirements, the EEOC must follow the same pre-suit procedures whether the suit is an individual one or a pattern-or-practice action. *Id.* § 2000e-6(e) ("All such actions shall be conducted in accordance with the procedures set forth in [section 706] of this title."). But the EEOC took the position that a distinction between section 707's subsections excused it from doing so in this matter. It thought that section 707(a), unlike section 707(e), gave it a right to litigate without

an underlying charge or unlawful employment practice, and by extension, without first conciliating. In drawing this novel distinction, the EEOC noted the difference between the language of section 707(a) and section 707(e): the former refers to a "pattern or practice of resistance," while the latter speaks of a "charge of a pattern or practice of discrimination." *Id.* § 2000e-6(a), (e). The Commission also distinguished between section 707(a)'s broad reach to "any person or group of persons" and section 707(e)'s limitation to employers. *Id.* In our opinion on the merits, we rejected the EEOC's interpretation of the statute and held that conciliation is necessary under both sections.

We are now faced with a different question: whether the EEOC's position was far enough afield at the time it was advanced that a fee award is warranted. The district court thought so, but only because it believed that the EEOC had taken a position contrary to its own regulations. (The Commission argued otherwise.) The court did not otherwise address the legal foundations of the case. In fact, it ruled that the EEOC's factual foundations for bringing suit were *reasonable*. CVS argues that the district court erred in this latter finding, and urges us to affirm on either ground.

## II

In our initial opinion, we acknowledged that the standard of review for a district court's decision to award fees is abuse of discretion. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). This is so, we recognized, in order to account for the district court's "superior understanding of the litigation" and to avoid "a second major litigation" over attorneys' fees. *Id.* (quoting *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995). We also said, however, that

"the justifications for the generally deferential standard of re-
view are absent" for questions of law. *Jaffee v. Redmond*,
142 F.3d 409, 412 (7th Cir. 1998). In such cases, we wrote, we
consider the district court's legal analysis *de novo*. *Pickett*,
664 F.3d at 639; *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir.
1999).

CVS challenges the last step of that analysis in its petition
for rehearing. It argues that any use of a *de novo* standard of
review conflicts with the Supreme Court's decision in *Pierce
v. Underwood*, 487 U.S. 552 (1988), and with this court's deci-
sion in *Mars Steel Corporation v. Continental Bank N.A.*, 880 F.2d
928 (7th Cir. 1989) (*en banc*). We have gone back and examined
those cases carefully. As we now explain, we are satisfied that
in substance our decision is faithful to the governing Supreme
Court cases, even if we were too summary in our initial de-
scription of the standard of review in the original opinion.

In *Pierce*, the Supreme Court confronted a question about
the proper interpretation of the Equal Access to Justice Act
(EAJA), 28 U.S.C. § 2412. That statute permits an award of at-
torney's fees against the government in civil actions, unless
the court finds that the position of the United States was "sub-
stantially justified." The primary question before the Court
was what standard of review should be used in reviewing a
district court's determination that the government's position
was not substantially justified. After noting that for purposes
of standard of review, there are three types of questions—
those of law, those of fact, and matters of discretion—the
Court concluded that the substantial-justification question
was deeply intertwined with the facts of a case, and so abuse-
of-discretion review was proper. Often, it observed, "the
question will turn upon not merely what was the law, but

what was the evidence regarding the facts." 487 U.S. at 560. Another consideration motivating the Court's decision was that in *Pierce* itself there was no ruling on the legal issue: the underlying litigation had been resolved through a settlement.

This court confronted a similar issue in *Mars Steel*, where we had to choose a standard of review for decisions about sanctions under Federal Rule of Civil Procedure 11. Sitting *en banc*, we concluded that we would "use a deferential standard consistently." 880 F.2d at 930. We relied in part on *Pierce*, commenting that it "would provide a powerful impetus" toward the result we had reached. Notions of what is compatible with "the sound administration of justice," which also played a role in *Pierce*, are inherently questions of judgment that do not lend themselves to broad generalizations. *Id.* at 934. That in turn supports deferential review.

But *Pierce* is not the Supreme Court's last word on these matters. Having established that the EAJA (which does not apply in this case, see *EEOC v. Consol. Serv. Sys.*, 30 F.3d 58, 59 (7th Cir. 1994)) calls for an abuse-of-discretion standard of review, the Court then had to decide exactly what that means. It had the occasion to do so in *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384 (1990), which, like *Mars Steel*, addressed the question of the standard of review for Rule 11 determinations. Using language reminiscent of *Pierce*, the Court began by stating that the question whether an attorney has violated Rule 11 "involves a consideration of three types of issues": factual questions, legal issues, and discretionary determinations. *Id.* at 399. As it had done in *Pierce*, the Court said that it was adopting a deferential, abuse-of-discretion standard of review across the board. *Id.* at 403–05. But in doing so, it gave

special treatment to questions of law. We reproduce the full quotation so that the context will be clear:

> Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11. Of course, this standard would not preclude the appellate court's correction of a district court's legal errors, *e.g.,* determining that Rule 11 sanctions could be imposed upon the signing attorney's law firm, see *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120 (1989), *or relying on a materially incorrect view of the relevant law* in determining that a pleading was not "warranted by existing law or a good faith argument" for changing the law. An appellate court would be justified in concluding that, in making such errors, the district court abused its discretion. "[I]f a district court's findings rest on an erroneous view of the law, they may be set aside on that basis." *Pullman–Standard v. Swint,* [456 U.S. 273, 287 (1982)].

496 U.S. at 402 (emphasis added). Lest there be any doubt about this gloss on the standard of review, the Court reiterated at the end of this part of its opinion that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 405.

The standard of review in the case before us is thus the deferential abuse-of-discretion approach, but in the course of applying that approach, we must assess whether the district court based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.

A

Although section 706(k) of Title VII provides for fee shift-
ing in favor of any "prevailing party," 42 U.S.C. § 2000e-5(k),
courts have long recognized that fees should be awarded to
prevailing defendants only in exceptional cases. This reflects
the policy underlying the Civil Rights Act—the protections of
Title VII would be undermined if good-faith plaintiffs pursu-
ing reasonable theories were deterred from filing because of
the risk of paying a hefty fee award in defeat. A district court
may award fees to a prevailing defendant only "upon a find-
ing that the plaintiff's action was frivolous, unreasonable, or
without foundation, even though not brought in subjective
bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412,
421 (1978). In making this finding, district courts must "resist
the understandable temptation to engage in *post hoc* reason-
ing … ." *Id.* at 421–22. We have added that "[i]nnovative, even
persistent advocacy in the face of great adversity must not be
unreasonably penalized with hindsight." *Hamer v. Lake Cnty.*,
819 F.2d 1362, 1367 (7th Cir. 1987).

A review of our cases underscores that fees should be
awarded to prevailing defendants only when the plaintiff's
case is utterly without merit. The determination of such fun-
damental lack of merit might rest on one of two things: a de-
termination that the case is *legally* frivolous, see *Denton v. Her-
nandez*, 504 U.S. 25, 31–32 (1992) (noting that in *Neitzke v. Wil-
liams*, 490 U.S. 319 (1989), the Supreme Court was concerned
with the standard for determining frivolousness of legal con-
clusions), or an assessment that the case is *factually* frivolous,
*Denton*, 504 U.S. at 32–33 ("a court may dismiss a claim as fac-
tually frivolous only if the facts alleged are 'clearly baseless,'"
meaning irrational or wholly incredible). When it is a

farfetched *legal* theory that makes a plaintiff's case frivolous, we have held that an "award of fees is only permitted when litigation proceeds in the face of controlling and unambiguous precedent." *Hamer*, 819 F.2d at 1368.

The case before us does not involve disputed issues of fact. It dealt instead with a purely legal, procedural issue: whether the EEOC must attempt to conciliate cases filed under section 707(a), 42 U.S.C. § 2000e-6(a), just as it does in other areas. We must therefore decide whether the district court, in ordering the EEOC to pay fees, abused its discretion by "bas[ing] its ruling on an erroneous view of the law." *Cooter & Gell*, 496 U.S. at 405.

### B

Fee shifting is unwarranted for a suit implicating "an issue of first impression in an unsettled area of the law." *Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir. 1981). A fee award is also unjustified if it is based on nothing more than an "aggressive" reading of the EEOC guidelines. *LeBeau v. Libbey-Owens-Ford Co.*, 799 F.2d 1152, 1162–63 (7th Cir. 1986). That a defendant spends substantial time and effort defending against a case also counts against frivolousness. See *Hamilton v. Daley*, 777 F.2d 1207, 1214 & n.7 (7th Cir. 1985). The fact that the EEOC lost on the merits is only the first step. We must turn back the calendar and ask how the EEOC's theory as a matter of law looked in light of the available statutes, regulations, and case law at the time the action was litigated. *Christiansburg*, 434 U.S. at 421–22.

As we noted earlier, the linchpin of the EEOC's legal theory was a subtle textual distinction between section 707(a)

and section 707(e). We reproduce the relevant language here for ease of comparison:

> [Section 707(a):] Whenever the Attorney General [now the Commission] has reasonable cause to believe that *any person or group of persons* is engaged in a *pattern or practice of resistance* to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States … .

42 U.S.C. § 2000e-6(a) (emphasis added).

> [Section 707(e):] [T]he Commission shall have authority to investigate and act on a charge of *a pattern or practice of discrimination*, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title [*i.e.*, section 706 of the Civil Rights Act of 1964].

42 U.S.C. § 2000e-6(e) (emphasis added).

While section 707(e) mandates that the EEOC follow section 706's procedural requirements, section 707(a) says nothing about those procedures (or any others). The EEOC argues that its inference from the statutory language—that section 706 procedures apply only to section 707(e) proceedings—was novel, but it had legitimate support. And at this stage, the Commission reminds us, the EEOC's legal position did not have to satisfy a high burden—a colorable legal argument will

do. Comparing the EEOC's arguments to then-existing law shows that it met this low bar.

First, the EEOC had a textual foothold. Section 707(a) allows for suit against "any person or group of persons." By comparison, unlawful employment practices can be committed only by employers, labor organizations, employment agencies, and similar actors. 42 U.S.C. §§ 2000e-2, 2000e-3. This makes section 707(a) something of an odd fit for the rest of the statutory scheme and for the EEOC's typical enforcement powers. Title II of the statute contains an analogous provision with identical language, and before section 707(a) enforcement power was transferred in 1974 from the Attorney General to the EEOC, see 42 U.S.C. § 2000e-6(c), the two provisions were interpreted alike. Compare *id.* § 2000a-5, with *id.* § 2000e-6. See also *United States v. Original Knights of Ku Klux Klan*, 250 F. Supp. 330, 349 (E.D. La. 1965) (interpreting both provisions as a broad grant of authority to seek injunctive relief "against any person, public or private"). Perhaps this changed with the transfer of power from the Attorney General to the EEOC, but it is difficult to envision what conciliation with a non-employer would look like. Granted, the EEOC brought this case against an employer, but the EEOC was entitled to test its theory that section 707(a) is distinctive and does not distinguish between employers and non-employers.

Second, the EEOC had modest support in our prior case law. The crucial case noted:

> In the course of amending the enforcement provisions of Title VII, Congress also transferred to EEOC authority previously vested in the Attorney General under

§ 707 of Title VII to institute "pattern or practice" law-
suits on its own initiative—*i.e.*, without certain of the
prerequisites to a civil action under § 2000e-5(f).

*EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir.
1996). On the merits appeal in the present case, we said that
this "statement [about the transfer of authority] should not be
interpreted as permitting the EEOC to proceed without a
charge, as the EEOC contends and the district court con-
cluded in the decision below." *CVS Pharmacy*, 809 F.3d at 343.
The need for that clarification in and of itself, however,
demonstrates that the EEOC had a legal hook on which to
hang its case.

Third, no case squarely foreclosed the EEOC's legal inter-
pretation. CVS emphasizes that courts have "note[d] that the
conciliation requirements do not change depending on
whether the EEOC brings a claim under § 2000e-5 (a § 706
claim) or § 2000e-6 (a § 707 pattern-or-practice claim)." *Ari-
zona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1201 (9th Cir.
2016). But these cases all rely on section 707(e), which has al-
ways required the use of the section 706 procedures, includ-
ing conciliation. No cases before our earlier decision con-
tended with the possibility of two different sorts of section 707
pattern or practice claims. *E.g.*, *id.*; *United States v. State of
South Carolina*, 445 F. Supp. 1094, 1110–11 (D.S.C. 1977). In-
deed, we have found no case prior to the filing of the present
one that attempted to parse the language of sections 707(a)
and 707(e) as the EEOC did. Perhaps the best inference from
this silence was that there is no such distinction, but we can-
not say that the EEOC's reading was frivolous as a result.
Novel interpretations succeed or fail, but the law "grows with
clarity for benefit of the public" whatever the outcome. *Kohler*

*v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1267 (9th Cir. 2015). For similar reasons, we do not hold against the Commission any inconsistent positions it has taken in other cases. The Commission is entitled to change its mind as new members are appointed and it is confronted with new problems.

CVS contends that even if these arguments made the EEOC's case colorable in the abstract, Tonia Ramos's charge of unlawful employment practices renders them legally infirm as applied to this case. But there is a fallacy in its argument. It assumes that the EEOC had decided to proceed with Ramos's charge. Had it done so, the action would have fallen squarely within section 707(e) and the section 706 procedures would have been required. But it did not. Quite to the contrary: the Commission dismissed Ramos's charge, and so that charge cannot possibly form the basis for this suit. CVS clings to a lone mention of "unlawful employment practices" in the complaint as evidence that the Commission's case was "really" brought under section 707(e), but we are not persuaded. Reading the complaint as a whole, it is plain that this is a section 707(a) action.

If the district court had otherwise accepted the EEOC's legal arguments, it surely would have given the Commission leave to amend its complaint for the first time to allow it to delete the offending phrase. See *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Further, we found in our merits opinion that "the EEOC has not alleged that CVS engaged in

discrimination or retaliation by offering the Agreement to terminated employees … ." *CVS Pharmacy*, 809 F.3d at 343. Consistent with that opinion, we must assume here that Ramos's claim is gone.

The district court rested its fee award not on the statute, but on two of the EEOC's own regulations. Those regulations require that the Commission first use conciliation to eliminate any unlawful employment practices, 29 C.F.R. § 1601.24, and that the Commission "may bring a civil action against any respondent named in a charge" only if conciliation has failed, *id*. § 1601.27. But these regulations purport to apply only when an unlawful employment practice has been alleged or when the EEOC is proceeding pursuant to a charge. The Commission's arguments that neither was present here apply just as well to the regulations as they do to the statute. The district court erred by failing to interpret the EEOC regulations in the same light. Regulations that parallel the statutory language cannot independently render the suit unreasonable.

Finally, we note that if the real problem with the EEOC's case were a failure to conciliate, it is questionable whether a fee award is appropriate after *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015). *Mach Mining* holds that where the failure to conciliate properly is apparent at the outset of litigation, the "appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Id.* at 1656. Dismissal is still an appropriate remedy if the violations become apparent later. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1648–49 (2016) (approving of a fee award after the EEOC "used 'discovery in the resulting lawsuit as a fishing expedition to uncover more violations'" (quoting *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 676

(8th Cir. 2012))). CVS incurred legal fees in this case not be-
cause of a failure to conciliate, but because of the novelty of
the EEOC's claimed independent cause of action under sec-
tion 707(a). Even had the EEOC conciliated, its ability to bring
a pattern or practice of *resistance* case without underlying dis-
crimination or retaliation would have been at issue, and the
legal arguments the same.

Our starting point is of course this court's decision on the
merits. But it takes much more than a loss on the merits to
warrant a fee award. *Christiansburg*, 434 U.S. at 421 (noting
that "'meritless' is to be understood as meaning groundless or
without foundation, rather than simply that the plaintiff has
ultimately lost his case"). We have emphasized the arguments
in favor of the EEOC only to show that its position did not
meet the *Christiansburg* standard. Obviously, the merits panel
found CVS's arguments more persuasive. We have no need
here to repeat that analysis. And we freely concede that the
legal novelty of the EEOC's claim was a strike against it. On
the other hand, CVS spent, by its own account, at least
823.5 hours defending this suit. CVS told the district court
that the case involved "novel issues that required deep under-
standing of Title VII's text, structure, and history." If it takes
a "deep understanding" of the statute to refute a legal theory,
one can hardly argue with a straight face that the same case
was squarely blocked by controlling authority. Novelty may
counsel against adopting the EEOC's reading of its own pow-
ers, but that same novelty also counsels against awarding
fees. *Reichenberger*, 660 F.2d at 288.

As we emphasized at the outset, a fee award can be as-
sessed against a losing plaintiff only if its arguments were

squarely blocked by "controlling and unambiguous precedent." *Hamer*, 819 F.2d at 1368. The EEOC's theory was not that fruitless. Precedent may not have favored it, but the fee statute does not punish a civil rights litigant for pursuing a novel, even if ambitious, theory.

C

While an infirm factual foundation can also support a fee award, *Christiansburg*, 434 U.S. at 421, the district court did not find that the EEOC's case was factually frivolous. We owe deference to that ruling, and in any event we agree that the EEOC did not act frivolously by arguing that CVS's severance agreement might deter former employees from cooperating with the Commission. The EEOC's factual case centered on the contrast between the broad language of the contract's waiver provisions and the relatively vague exceptions. On the merits, we noted that it was "unreasonable to construe the Agreement as restricting the signatory from filing a charge or otherwise participating in EEOC proceedings." *CVS Pharmacy*, 809 F.3d at 341 n.4. Again, we take that as a given. But the EEOC was trying to make a more subtle point: the agreement, it feared, would have the practical effect of chilling at least some former employees—presumably none of them legal experts—from cooperating, whatever the agreement's legal effect. True, Tonia Ramos's actual cooperation may count as evidence against this theory, but it does not render it frivolous. See *Christiansburg*, 434 U.S. at 422 ("Decisive facts may not emerge until discovery or trial."); *Ekanem v. Health & Hosp. Corp. of Marion Cnty.*, 724 F.2d 563, 574–75 (7th Cir. 1983) (noting that the "'pattern or practice' theory of proof … affords plaintiffs wide latitude in attempting to establish circumstantial evidence of unlawful intent"). We cannot say at this stage

that the EEOC could not have presented facts in support of its theory. The district court did not abuse its discretion by finding the suit factually reasonable.

### III

Because the EEOC's suit was neither legally nor factually frivolous, we REVERSE the district court's order imposing on the EEOC the obligation to pay CVS's fees in part. We REMAND for the district court to enter an amended judgment consistent with this opinion.